IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JEFFERY ALLEN BRUSHWOOD,     )
                             )
            Petitioner,      )
                             )
v.                           )     Case No. CIV-12-193-R
                             )
WARDEN ERIC FRANKLIN,        )
                             )
            Respondent.      )

**REPORT AND RECOMMENDATION**

Mr. Jeffery Brushwood is a state inmate requesting a writ of habeas corpus. The Court should deny the request.

I.     Background

In state court, Mr. Brushwood was convicted of first-degree attempted rape. *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at ECF[1] p. 1 (Feb. 21, 2012) ("Petition"). The Oklahoma Court of Criminal Appeals ("OCCA") affirmed,[2] and Mr. Brushwood filed the present action with claims involving:

- constitutional infirmities in Okla. Stat. tit. 12 § 2413,

- improper introduction of propensity evidence,

- misconduct by the prosecutor,

---

[1]     "ECF p. __" refers to the "CMECF" pagination.

[2]     Summary Opinion, *Brushwood v. State*, Case No. F-2009-548 (Okla. Crim. App. Feb. 18, 2011) ("OCCA Opinion").

- violation of the Confrontation Clause, and

- denial of a speedy trial.[3]

## II.    Standard for Habeas Relief

The Court can grant habeas relief "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a) (2006).   The applicable standard turns on how the state appellate court had treated the underlying issue.

When the state appellate court does not address the merits, the federal district court exercises its independent judgment.  *See, e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).  In this situation, the Petitioner must demonstrate by a preponderance of the evidence that he is entitled to habeas relief.[4]

If the OCCA denied the claims on the merits, the federal district court bears a "secondary and limited" role.  *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998) (citation omitted).

For example, when factual allegations are involved, a federal court can grant habeas relief only if the state court had made "an unreasonable determination of the facts in light of the evidence presented."  AEDPA, 28 U.S.C. § 2254(d)(2) (2006).

---

[3]    Petition at ECF pp. 5-14, Attachment at ECF pp. 4-40.

[4]    *See Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (*per curiam*) ("Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." (citation omitted)).

The federal district court also engages in limited scrutiny of legal determinations when the state's highest court has addressed the merits.  In these circumstances, the federal court considers only whether the state appeals court's conclusions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  AEDPA, 28 U.S.C. § 2254(d)(1) (2006).

The threshold issue is whether federal law clearly establishes the constitutional protection underlying the Petitioner's claim.  "A legal principle is 'clearly established' . . . only when it is embodied in a holding of [the Supreme Court]."  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173 (2010) (citations omitted).  For this purpose, Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings."  *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  In the absence of Supreme Court precedents, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law."  *Id*. at 1017 (citation omitted).

If the underlying constitutional right is clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent.  *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008).  These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court holdings or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (citation omitted).

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedent. *See Hicks v. Franklin*, 546 F.3d at 1283.   Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses to extend, prior decisions.   *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

III.   The Constitutionality of Okla. Stat. tit. 12 § 2413

Mr. Brushwood alleges that Okla. Stat. tit. 12 § 2413 violates the federal and state constitutions.  Petition at ECF p. 5, Attachment at ECF pp. 4-19.  The OCCA disagreed and rejected the claim.  OCCA Opinion at p. 2.  This determination does not entitle the Petitioner to habeas relief.

    A.   The Application of Section 2413 in State Court and the OCCA's Analysis of the Constitutional Challenge

Okla. Stat. tit. 12 § 2413 provides in relevant part:

> In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

Okla. Stat. tit. 12 § 2413(A) (2011).  The prosecution utilized this statute at trial, calling witnesses who testified that the Petitioner had previously committed sexual assaults.  *See* Transcript of Proceedings, Vol. II at pp. 176-86, 194, 200-02, 225-40, *State v. Brushwood*, Case No. CF-2004-1021 (Okla. Co. Dist. Ct. filed Aug. 24, 2009) ("Trial Transcript").

The OCCA rejected Mr. Brushwood's constitutional challenges to Okla. Stat. tit. 12 § 2413.  OCCA Opinion at p. 2.

    B.    <u>The Petitioner's Claim Based on Violation of the State Constitution</u>

In part, the Petitioner seeks federal habeas relief based on violation of the Oklahoma Constitution.  Petition at ECF p. 5, Attachment at ECF pp. 11-19.  But such a violation would not entitle Mr. Brushwood to federal habeas relief.[5]  Thus, the Court should reject the portion of the claim based on violation of the state constitution.

    C.    <u>The Petitioner's Claim Based on Violation of the Federal Constitution</u>

Mr. Brushwood has also invoked the federal constitution, arguing in part that Okla. Stat. tit. 12 § 2413 creates a deprivation of due process.  *Id.* at ECF p. 5, Attachment at ECF pp. 11-17.  This claim should be rejected.

The OCCA's determination on this issue can only be considered unreasonable if the Supreme Court has clearly answered the relevant question.  *See supra* p. 3.  The Supreme Court has not done so, and the Western District of Oklahoma should reject the habeas claim based on the absence of clearly established federal law.

This Court recently addressed a similar issue in *Burke v. Rudek*, 2012 WL 346651 (W.D. Okla. Feb. 1, 2012) (unpublished order by district court judge).  There the petitioner claimed that Okla. Stat. tit. 12 § 2413 violated the federal constitution, and the OCCA

---

[5]    *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)).

rejected the claim on the merits.  *See Burke v. Rudek*, 2012 WL 346651, Westlaw op. at 1-2 (W.D. Okla. Feb. 1, 2012) (unpublished order by district court judge).  The Western District of Oklahoma rejected the subsequent habeas claim in light of the absence of a dispositive Supreme Court decision on the constitutionality of Okla. Stat. tit. 12 § 2413.  *Id.*, Westlaw op. at 2 (citing *House v. Hatch*, 527 F.3d 1010, 1017 (10th Cir. 2008)).  The Tenth Circuit Court of Appeals dismissed the appeal, concluding in part that the OCCA had acted reasonably in upholding the constitutionality of Section 2413.  *Burke v. Rudek*, 2012 WL 2019164, Westlaw op. at 1 (10th Cir. June 6, 2012) (unpublished op.).

The reasoning in *Burke* applies here.  The Supreme Court has not issued a decision that questions the constitutionality of Okla. Stat. tit. 12 § 2413 or a similar statute.[6]  In the absence of clearly established federal law on the issue, the Court should reject the habeas claim.  *See supra* p. 3.

IV.     The Alleged Introduction of Unfairly Prejudicial Propensity Evidence

Mr. Brushwood also claims that the trial court had erred in allowing the propensity evidence because it was too prejudicial under Okla. Stat. tit. 12 § 2413.  Petition at ECF p. 7, Attachment at ECF pp. 20-25.

---

[6]     In *Burke* the Tenth Circuit Court of Appeals noted that Okla. Stat. tit. 12 § 2413(A) resembles Federal Rule of Evidence 413(a) and that the court had upheld the federal statute against a constitutional challenge.  *Burke v. Rudek*, 2012 WL 2019164, Westlaw op. at 1 (10th Cir. June 6, 2012) (unpublished op.); *see United States v. Enjady*, 134 F.3d 1427, 1431-33 (10th Cir. 1998) ("[W]e conclude that Rule 413 is not unconstitutional on its face as a violation of the Due Process Clause.").

The threshold issue is whether the Court should construe the claim to include violation of the federal constitution as well as Okla. Stat. tit. 12 § 2413.   In the petition, Mr. Brushwood did not identify the statutory or constitutional basis for the habeas claim.  *See* Petition at ECF pp. 7-8.  In the brief attached to the petition, Mr. Brushwood quoted the Fourteenth Amendment.  *Id.* at ECF p. 20.  But he did not clearly state whether he was intending to invoke the federal constitution as a basis for the claim.  *See id.* at ECF pp. 20-25. The issue of construction is significant because habeas relief can be based on violation of the federal constitution but not state law.  *See supra* note 5 (quoting *Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989)).

In the direct appeal, Mr. Brushwood challenged the admissibility of the propensity evidence based solely on Okla. Stat. tit. 12 § 2413.  Original Brief for and on Behalf of Jeffery Allen Brushwood, Appellant at pp. 20-24, *Brushwood v. State*, Case No. F-2009-548 (Okla. Crim. App. Nov. 17, 2009).   As a result, the OCCA analyzed the claim solely on the basis of Section 2413.  OCCA Opinion at p. 2.

In the habeas proceedings, the district court could conceivably construe the habeas claim to go further and challenge introduction of the propensity evidence based on the Fourteenth Amendment as well as Section 2413. But this interpretation appears problematic.

In the habeas petition, Mr. Brushwood specifically invoked the United States Constitution when he challenged the constitutionality of Okla. Stat. tit. 12 § 2413, the admissibility of the preliminary hearing transcript, and the length of time between the charges and the trial.  Petition at ECF pp. 5, 10, 13.  Mr. Brushwood declined to refer to the

federal constitution only when he claimed unfair prejudice in the introduction of propensity evidence. *See id.* at ECF pp. 7-8. Even though Mr. Brushwood is a layman, he obviously knew how to invoke the federal constitution when he intended to assert a federal claim. Thus, omission of a constitutional claim could have been purposeful.[7]

If the Court were to rewrite the petition to include a federal claim, Mr. Brushwood could be disadvantaged because a constitutional theory would be subject to a procedural default in light of the waiver in the state court appeal.[8]

The Tenth Circuit Court of Appeals recently addressed a virtually identical issue in *Burke v. Rudek*, 2012 WL 2019164 (10th Cir. June 6, 2012) (unpublished op.). There an Oklahoma prisoner claimed in the habeas petition that propensity evidence should have been excluded because the prejudicial impact had far outweighed the probative value. Petition at ECF p. 10, *Burke v. Rudek*, Case No. CIV-11-381-HE (W.D. Okla. Apr. 6, 2011). The petitioner had presented the same claim in the OCCA. Original Brief for and on Behalf of Alfred Burke, Jr., Appellant at pp. 21-25, *Burke v. State*, Case No. F-2009-15 (Okla. Crim. App. July 7, 2009). The Tenth Circuit Court of Appeals acknowledged that it could construe

---

[7]    *See Harris v. Wackenhut Services, Inc.*, 648 F. Supp. 2d 53, 60 (D. D.C. 2009) ("Where, as here, the plaintiff has demonstrated knowledge of how to plead a proper theory of discrimination, but appears to have deliberately pled that claim such that he excludes by omission other theories, his complaint should not be read as having pled the omitted theories." citation omitted)), *aff'd*, 419 Fed. Appx. 1 (D.C. Cir. May 3, 2011) (unpublished op.).

[8]    *See* Robert Bacharach & Lyn Entzeroth, *Judicial Advocacy in Pro Se Litigation: A Return to Neutrality*, 42 Indiana L. Rev. 19, 31-43 (2009) (arguing that *pro se* litigants can be unintentionally harmed by construction of pleadings to encompass theories that the claimants had not intended to assert).

the habeas claim to arise under the federal constitution as well as state law.  *Burke v. Rudek*,

2012 WL 2019164, Westlaw op. at 1 (10th Cir. June 6, 2012) (unpublished op.).  But, the

court noted that even if it were to adopt this construction, it could not say that the claim had

been exhausted in state court.  *Id*.  Raising the issue of procedural bar *sua sponte*, the court

stated: "Because it's clear that Oklahoma courts would now refuse to consider [the inmate-

petitioner's] federal constitutional claims, these claims are subject to an anticipatory

procedural bar, and there is no basis in the record to find either cause and prejudice or actual

innocence sufficient to overcome this bar."  *Id*. (citation omitted).

     The present circumstances are virtually identical to those in *Burke v. Rudek*.  In both

cases, the Oklahoma prisoners relied solely on Okla. Stat. tit. 12 § 2413 when they

challenged the introduction of sexual propensity evidence in the state appeals court.  *See*

*supra* pp. 7-8.  In *Burke*, the Western District of Oklahoma could have interpreted the habeas

claim to implicate the federal constitution as well as state law.  *See supra* p. 9.  But, the Court

could not plausibly read the challenges in the OCCA to include a constitutional challenge.

*See supra* p. 9.  Thus, the *Burke* court held that a challenge under the United States

Constitution would have been subject to an anticipatory procedural bar.  *See supra* p. 9.  The

same would be true here.[9]  In these circumstances, the Court should decline to read the

---

[9]    Procedural default involves an affirmative defense, and the Respondent has not raised the issue.  *See Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999) (stating that procedural default involves an affirmative defense).  The Respondent presumably declined to raise the issue because he had interpreted the habeas claim to involve only a violation of state law.  Response to Petition for Writ of Habeas Corpus at pp. 14-18 (Mar. 26, 2012).  Because Mr. Brushwood had clearly raised that claim in the OCCA, the Respondent said that the theory was exhausted.  *Id.* at p. 2; *see supra* p. 7.  As discussed in the text, the present issue turns on whether a different habeas claim based on

habeas claim to include a constitutional challenge to the introduction of sexual propensity evidence.

This construction forecloses relief because the Petitioner cannot obtain a writ of habeas corpus based solely on a violation of Okla. Stat. tit. 12 § 2413. *See supra* p. 7.

V.     Prosecutorial Misconduct

Mr. Brushwood also alleges misconduct in the prosecutor's closing argument. Petition, Attachment at ECF pp. 24-25. The Petitioner had presented the claim on direct appeal, and the OCCA found "no plain error in the prosecutor's remarks." OCCA Opinion at p. 2. The OCCA's decision was reasonable under Supreme Court precedent.[10]

The Supreme Court has held that the Fourteenth Amendment's Due Process Clause entitles a defendant to fundamental fairness in the prosecutor's conduct at trial. *See Greer*

---

the federal constitution can now be pursued in state court. The district court can consider that issue *sua sponte. See Stanko v. Davis*, 617 F.3d 1262, 1271 n.12 (2010) ("This court allows procedural default to be raised sua sponte." (citation omitted)), *cert. dismissed*, __ U.S. __, 131 S. Ct. 973 (2011); *Hardiman v. Reynolds*, 971 F.2d 500, 504 (10th Cir. 1992) (holding that a court can raise procedural default *sua sponte*).

[10]    As a practical matter, little difference exists between the Oklahoma test for plain error and the federal standard for due process. *See Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) ("We see no practical distinction between the formulations of plain error in *Thornburg* [*v. State*, 985 P.2d 1234 (Okla. Crim. App. 1999)] and *Cleary* [*v. State*, 942 P.2d 736 (Okla. Crim. App. 1997)] and the federal due-process test, which requires reversal when error 'so infused the trial with unfairness as to deny due process of law.'" (citation omitted)). As a result, the state court's analysis of plain error should be considered "on the merits" for purposes of habeas review. *See Douglas v. Workman*, 560 F.3d 1156, 1171 (10th Cir. 2009) (providing that a state court's application of the plain error standard "is on the merits" to the extent that the court has found the claim invalid "under federal law" (citation omitted)).

*v. Miller*, 483 U.S. 756, 765 (1987) ("This Court has recognized that prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)).[11] "'Ultimately, [the Court] must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.'" *Duckett v. Mullin*, 306 F.3d 982, 989 (10th Cir. 2002) (citation omitted)). To that end, counsel's failure to object, "while not dispositive, is relevant to a fundamental fairness assessment." *Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000) (citation omitted), *overruled in part on other grounds*, *Neill v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001) (*en banc*).[12]

The Petitioner's first complaint involves the prosecutor's remark that "[s]ex offenders often have a personality trait that does not change" and "a leopard does not change his

---

[11]    When a petitioner alleges that the prosecutor's comments had violated a specific constitutional right, habeas relief may be available even if the trial were otherwise fair. *See Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  But Mr. Brushwood has not alleged the violation of a specific constitutional right.

[12]    The Eighth Circuit Court of Appeals explained the importance of defense counsel's silence on a habeas claim involving prosecutorial misconduct:

>        The absence of a timely objection is particularly significant to a claim of prosecutor misconduct in closing argument.  Defense counsel heard the alleged misconduct and was in a far better position to judge its significance to the trial than an appellate court reading a cold transcript.  The trial court also heard the alleged misconduct and likewise was in a better position to judge its significance.  The trial court has the power to intervene *sua sponte*, for example, with a criticism of the prosecutor or a cautionary instruction.  But that sort of interruption risks frustrating defense counsel's tactical decision not to object.

*James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) (citation omitted).

spots."  Petition, Attachment at ECF pp. 23-24 (citing Trial Transcript, Vol. III at pp. 413,

415).  Mr. Brushwood argues that the statements had involved facts not in evidence.  *Id.*

However, the Petitioner's attorney did not object on this ground,[13] and the evidence included

testimony about prior sexual assaults.[14]  In light of this evidence, the OCCA could reasonably

conclude that the prosecutor's statements were supported by the evidence and did not create

a fundamentally unfair trial.[15]

Mr. Brushwood also complains that the prosecutor had labeled the propensity

witnesses as "victims."  Petition, Attachment at ECF p. 24.  The OCCA could reasonably

conclude that the label did not affect the jury's ability to fairly judge the evidence.[16]

For both of the comments, any unfairness would also be undercut by the trial court's

admonitions to the jury.  For example, the trial judge told the jury two times about the limited

relevance of the propensity evidence.  Trial Transcript, Vol. II at pp. 174-75; Original

Record, Vol. III at p. 390 (Jury Instruction No. 19), *State v. Brushwood*, Case No. CF-2004-

1021 (Okla. Co. Dist. Ct. filed Sept. 11, 2009) ("Original Record").  And, the court told the

---

[13]     When the prosecutor referred to a leopard the second time, Mr. Brushwood's attorney objected as "off point."  Trial Transcript, Vol. III at p. 415.

[14]     *See supra* p. 4.

[15]     *See Gaines v. Workman*, 326 Fed. Appx. 449, 454 (10th Cir. Mar. 31, 2009) (unpublished op.) (holding that the OCCA had reasonably rejected a prosecutorial misconduct claim when the State's closing argument had been based "on reasonable inferences from the evidence").

[16]     *See United States v. Guidry*, 456 F.3d 493, 505-06 (5th Cir. 2006) (holding that the constitution did not prevent labeling of a witness as a "victim" when she had testified regarding a prior sexual assault by the petitioner).

jury four times that it was to find the facts based on the evidence and that the lawyers'
comments in closing argument did not constitute "evidence":

- "Ladies and gentlemen, you're the trier of the facts.  You will determine what
  the facts are in this case based upon the evidence that you have heard.
  Anything that the lawyers say is for purposes of persuasion only.  You will
  determine the facts."[17]

- "Ladies and gentlemen of the jury, once again, I remind you that you're the
  trier of the facts, you will determine what the facts are established by the
  evidence in the case.  Anything the lawyers say is not evidence."[18]

- "Ladies and gentlemen of the jury, I remind you [that] you are the finders of
  facts.  Please determine what the evidence is or what the facts are based on the
  evidence."[19]

- "Ladies and gentlemen of the jury, you're the trier of the facts.  I've
  determined what the law is, I've submit[ted] the law to you in the jury
  instructions.  This is argument."[20]

In light of the trial court's admonitions, the OCCA could reasonably conclude that the
prosecutor's comments did not result in a constitutional violation.[21]

---

[17]     Trial Transcript, Vol. III at p. 397.

[18]     Trial Transcript, Vol. III at p. 398.

[19]     Trial Transcript, Vol. III at p. 406.

[20]     Trial Transcript, Vol. III at p. 415.

[21]     *See, e.g.*, *United States v. Lopez-Medina*, 596 F.3d 716, 740 (10th Cir. 2010) (holding that
the prosecutor's stray improper comments did not amount to a constitutional violation when the
"jury [was] advised that arguments of counsel are not evidence").

Because the OCCA reasonably applied clearly established federal law, the federal district court should reject Mr. Brushwood's argument for habeas relief based on prosecutorial misconduct.

VI.   <u>The Confrontation Clause</u>

According to the Petitioner, his constitutional right to confront the victim, Ms. Sayaka Matsumoto, was violated when the trial court allowed use of a transcript of her testimony from the preliminary hearing.  Petition at ECF pp. 10-11, Attachment at ECF pp. 25-31.  Mr. Brushwood argues that:

- the discovery had been limited at the time of the preliminary hearing,

- the trial court had limited cross-examination at the preliminary hearing, and

- discussions between Ms. Matsumoto and her interpreter had undermined the reliability of the testimony.

*Id.*  The state appeals court rejected the claim,[22] and this determination was reasonable under existing Supreme Court precedent.

The Sixth Amendment Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Supreme Court held in *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004), that testimonial hearsay can only be introduced if the witness is unavailable and the defendant had an earlier opportunity for cross-examination.  "*Crawford* is the 'clearly established Federal law' for purposes of

---

[22]     OCCA Opinion at p. 2.

[the Court's] AEDPA review." *Delgadillo v. Woodford*, 527 F.3d 919, 926 (9th Cir. 2008) (citing 28 U.S.C. § 2254(d)(1)); *see supra* p. 3.

Mr. Brushwood does not dispute the unavailability of the witness[23] and Ms. Matsumoto's testimony at the preliminary hearing clearly constituted "testimonial hearsay."[24] Thus, the habeas claim turns on the reasonableness of the OCCA's conclusion about the sufficiency of the opportunity for cross-examination. *See supra* p. 15. The OCCA's determination was reasonable based on the evidence and Supreme Court precedent.

A.    Limited Discovery

In part, the Petitioner complains that he had not obtained significant discovery by the time of the preliminary hearing. *See supra* p. 14. This complaint does not justify habeas relief, as the Confrontation Clause would not compel pretrial discovery.[25]

Mr. Brushwood does not identify the information discovered after the preliminary hearing or the expected impact of the material on his ability to conduct cross-examination

---

[23]    Ms. Matsumoto went to Japan and she refused to return for the trial. *See* Transcript of Motion Hearings at pp. 5-6, *State v. Brushwood*, Case No. CF-2004-1021 (Okla. Co. Dist. Ct. filed June 26, 2009) ("Motion Hearing Transcript").

[24]    *See Crawford v. Washington*, 541 U.S. 36, 53 (2004); *see also Phillips v. Miller*, 2006 WL 2271158, Westlaw op. at 1, 15 (W.D. Okla. Aug. 8, 2006) (unpublished op.) ("There can be no doubt that [the rape victim's] preliminary hearing testimony was testimonial [hearsay] within the confines of *Crawford*[.]"), *appeal dismissed*, 236 Fed. Appx. 433, 435 (10th Cir. June 6, 2007) (unpublished op.).

[25]    *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality op.) (stating that the Confrontation Clause does not compel pretrial discovery); *United States v. LaVallee*, 439 F.3d 670, 692 (10th Cir. 2006) ("The Confrontation Clause is not a 'constitutionally compelled rule of pretrial discovery.'" (citation omitted)).

at the preliminary hearing. *See* Petition, Attachment at ECF pp. 27-28. Against this backdrop, the OCCA acted reasonably in holding that Mr. Brushwood had enjoyed an adequate opportunity for cross-examination at the preliminary hearing even if the discovery at that point had been limited.[26]

      B.      <u>The Limitation of Cross-Examination at the Preliminary Hearing</u>

Mr. Brushwood also complains about limits on his ability to conduct cross-examination at the preliminary hearing. *See supra* p. 14.

The United States Supreme Court has held: "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (citation omitted). For a constitutional violation, a petitioner must show "that the evidence, if admitted, would have created reasonable doubt that did not exist without the evidence." *Patton v. Mullin*, 425 F.3d 788, 797 (10th Cir. 2005) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982)).

At the preliminary hearing, Ms. Matsumoto testified that Mr. Brushwood had approached her apartment with a request to use a "telephone book." *See* Preliminary Hearing Transcript at p. 7, *State v. Brushwood*, Case No. CF-2004-1021 (Okla. Co. Dist. Ct. filed Dec. 8, 2004) ("Preliminary Hearing Transcript"). When she went to retrieve the book, the

---

[26]     *See United States v. LaVallee*, 439 F.3d 670, 692 (10th Cir. 2006) (holding that a restriction on discovery did not violate the Confrontation Clause because it did not compel pretrial discovery); *see also supra* note 25.

Petitioner entered the apartment without an invitation. *See id.* After using the telephone book, Mr. Brushwood used the bathroom and Ms. Matsumoto entered her bedroom and contacted a friend to ask him to come over. *See id.* at p. 8. Ms. Matsumoto testified that when she attempted to leave her bedroom, Mr. Brushwood was standing in the doorway and would not let her pass. *Id.* at p. 9. The Petitioner then pushed the woman to the floor while he tried to remove her pants and his own. *See id.* at pp. 11-14. During an ensuing struggle, Ms. Matsumoto's friend knocked on the door and ended the attack. *See id.* at pp. 15-16, 30.

Mr. Brushwood's attorney cross-examined Ms. Matsumoto. *See id.* at pp. 18-37. The Petitioner argues that this opportunity was insufficient because the purpose of the preliminary hearing was confined to the existence of probable cause and the court had limited the questioning in several areas. Petition, Attachment at ECF pp. 28-30.

Although the purpose of a preliminary hearing was different, the Western District of Oklahoma and Tenth Circuit Court of Appeals have held that the opportunity to cross-examine the victim at a preliminary hearing can provide a sufficient opportunity for cross-examination under *Crawford* to allow the transcript to be read at the trial as substantive evidence.[27]

---

[27]     *Phillips v. Miller*, 2006 WL 2271158, Westlaw op. at 1, 15 (W.D. Okla. Aug. 8, 2006) (unpublished op.), *appeal dismissed*, 236 Fed. Appx. 433 (10th Cir. June 6, 2007) (unpublished op.); *United States v. Hargrove*, 382 Fed. Appx. 765, 779 (10th Cir. June 16, 2010) (unpublished op.).

The Petitioner also points to four limitations in his attorney's cross-examination of Ms. Matsumoto. *Id*., Attachment at ECF pp. 29-30. But the OCCA could reasonably reject the constitutional claim even with the restrictions.

First, the Petitioner points to a limitation in cross-examination regarding the time-period before the attack. *Id.*, Attachment at ECF p. 29. Defense counsel established that:

- Ms. Matsumoto had allowed the Petitioner to wait at her apartment for a few minutes while he was trying to call a friend and

- "no problems" had existed in the 10-15 minutes that the Petitioner was waiting.

Preliminary Hearing Transcript at pp. 24-25. The woman added, however, that she "was scared" because Mr. Brushwood was "staying a little bit longer than [she] thought." *Id.* at p. 25. Defense counsel then asked: "But he had asked you if he can stay and you said okay, right?" *Id.* The witness responded: "Yes. I was scared a little bit." *Id.* At that point, the trial judge interjected: "Now, let's move it along after the living room." *Id.*

Defense counsel did not object or pose another question on the subject,[28] and the Petitioner does not identify the evidence that he would have hoped to elicit without the judge's interruption.[29] Indeed, the woman had already acknowledged consent for Mr. Brushwood to wait in the apartment and the passage of 10-15 minutes without any incident.

---

[28]     *See* Preliminary Hearing Transcript at p. 25.

[29]     *See* Petition, Attachment at ECF p. 29.

*See supra* p. 18.  In these circumstances, the OCCA acted reasonably in concluding that the opportunity for cross-examination had been sufficient.

The Petitioner also complains about the trial court's disallowance of an answer when his attorney asked:  "And then after your friend came, you, your friend, and this individual went into your living room and sat down; is that right?"  Preliminary Hearing Transcript at p. 30; *see* Petition, Attachment at ECF p. 29.  Although the judge said that the question was irrelevant, defense counsel was able to elicit a concession that the Petitioner had stayed in the apartment 3-5 minutes before leaving.  *See* Preliminary Hearing Transcript at p. 30.

Again, Mr. Brushwood does not describe the other testimony that he had hoped to elicit or say how it would have supported his defense.  *See* Petition, Attachment at ECF p. 29. With only conclusory allegations, this Court cannot grant habeas relief.  *See Hooke*r v. *Mullin,* 293 F.3d 1232, 1238 (10th Cir. 2002) (holding that the petitioner's habeas claim, based on the Confrontation Clause, was conclusory).

Mr. Brushwood also argues that the trial court had prevented his attorney from questioning Ms. Matsumoto regarding fingerprints that had been taken at the apartment. Petition, Attachment at ECF pp. 29-30.  The attorney argued at the preliminary hearing that the question had related to the issue of identity.  Preliminary Hearing Transcript at p. 31.  But the judge stated that for purposes of a preliminary hearing, the witness had identified Mr. Brushwood.  *Id.*

The Petitioner contends that the limitation in the cross-examination had "prohibited . . . counsel from pointing out possible conflicting evidence about identity i.e., fingerprints versus eyewitness identification." Petition, Attachment at ECF p. 30. Again the Petitioner does not say what he had hoped to elicit. At trial, an investigator testified that the fingerprints could not be used to identify the culprit. Trial Transcript, Vol. II at pp. 20-21. With that testimony, Mr. Brushwood does not articulate what he had hoped to add regarding the fingerprints. Accordingly, the OCCA could reasonably conclude that the opportunity for cross-examination was sufficient under the Confrontation Clause.

Finally, Mr. Brushwood alleges an insufficient opportunity for cross-examination "when the preliminary hearing judge [had] limited the cross-examination regarding a sketch made by Ms. Matsumoto and another witness." Petition, Attachment at ECF p. 30. Again, the argument is conclusory, as Mr. Brushwood has not identified the evidence that he had hoped to elicit or explain how it could have supported the defense. *See id.* This conclusory argument does not cast doubt on the reasonableness of the OCCA's analysis. *See supra* p. 19 (citing *Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002)).

C.     Argument Involving the Discussions Between Ms. Matsumoto and Her Interpreter

Ms. Matsumoto used an interpreter in the preliminary hearing. *See* Preliminary Hearing Transcript at p. 4. According to the Petitioner, "there had apparently been additional dialogue going on between the interpreter and Ms. Matsumoto," which led to an admonition for the interpreter to "make an exact translation." Petition, Attachment at ECF p. 28. From

this exchange, Mr. Brushwood alleges that "the interpreter could have been misleading the victim Ms. Matsumoto." Petition at ECF p. 11.

The state court record does not reflect any known errors in the translation, and the Supreme Court has never found a violation of the Confrontation Clause based on a failure to make an exact translation of the testimony. In these circumstances, the OCCA could reasonably reject the constitutional claim even with the possibility of translation errors.[30]

D.     Summary

The OCCA reasonably concluded that the defense had an adequate opportunity to cross-examine Ms. Matsumoto and that the use of her testimony from the preliminary hearing did not violate the Confrontation Clause. *See supra* pp. 14-22. Accordingly, the federal district court should deny habeas relief on this ground. *See supra* pp. 2-4.

VII.   Speediness of the Trial

Authorities charged Mr. Brushwood on February 19, 2004, and his trial began on May 5, 2009. *See* Petition at ECF p. 13. According to the Petitioner, the delay violated his constitutional right to a speedy trial. *Id.* The OCCA disagreed,[31] and this determination was reasonable under Supreme Court precedent.

---

[30]     *See Vasquez v. Kirkland*, 572 F.3d 1029, 1036-38 (9th Cir. 2009) (stating that the opportunity for cross-examination was adequate notwithstanding problems for interpreters in the conveyance of questions involving time, color, past statements, or other abstract concepts); *see also United States v. Sabhnani*, 599 F.3d 215, 235 (2d Cir. 2010) (stating that the opportunity for cross-examination was adequate notwithstanding the inability to convey to the jury the witness' tone of voice because of the need for an interpreter).

[31]     OCCA Opinion at pp. 2-3.

Through the Fourteenth Amendment's Due Process Clause, the Sixth Amendment entitles state prisoners to a speedy trial. *See Klopfer v. North Carolina*, 386 U.S. 213, 223-24 (1967). The relevant factors include the:

- length of the delay,

- reasons for the delay,

- prior assertion of a right to a speedy trial, and

- prejudice to Mr. Brushwood.

*See Barker v. Wingo*, 407 U.S. 514, 530 (1972). None is dispositive, as all "are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 530, 533.

The OCCA applied this test[32] and concluded that the Petitioner had failed to show that the delay was unreasonable or prejudicial. OCCA Opinion at pp. 2-3. With this conclusion in state court, the federal district court can grant habeas relief only "if there is no possible balancing of the factors that both supports the OCCA's decision and is not contrary to clearly established Supreme Court precedent." *Jackson v. Ray*, 390 F.3d 1254, 1260-61 (10th Cir. 2004); *see also Simms v. Bravo*, 111 Fed. Appx. 552, 554 (10th Cir. Sept. 7, 2004)

---

[32]    The OCCA relied on one of its prior decisions rather than a Supreme Court opinion. OCCA Opinion at pp. 2-3 (citing *Ellis v. State*, 76 P.3d 1131, 1136 (Okla. Crim. App. 2003)). However, the cited decision had applied the seminal Supreme Court opinion on the subject, *Barker v. Wingo*, 207 U.S. 514 (1972). *Ellis v. State*, 76 P.3d 1131, 1136 (Okla. Crim. App. 2003) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

(unpublished op.).[33]   The federal district court should conclude that the OCCA had acted reasonably in it evaluation of the four relevant factors.

    A.    The Length of the Delay

The "length of delay" involves two parts.  First, Mr. Brushwood must establish a "presumptively prejudicial" delay.  *See Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  If the Petitioner succeeds, the Court must consider "'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'"  *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).

The Petitioner was charged by Information and arrested in February 2004,[34] and he was not tried until May 2009.  *See supra* p. 21.  The delay of over five years is "presumptively prejudicial" and requires consideration of the remaining factors.  *See, e.g.,*

---

[33]    In *Simms v. Bravo*, the Tenth Circuit Court of Appeals stated:

        The flexibility of the Supreme Court's speedy trial test creates a high hurdle for habeas petitioners claiming that a state court's speedy trial decision was unreasonable.  AEDPA only allows us to grant the petition if the state court's decision falls outside the range of reasonable applications of the *Barker* [*v. Wingo*, 407 U.S. 514 (1972)] test, and the Supreme Court made it clear in *Barker* that the range is very broad indeed.

*Simms v. Bravo*, 111 Fed. Appx. 552, 554 (10th Cir. Sept. 7, 2004) (unpublished op.).

[34]    "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first."  *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004) (citing *United States v. Marion*, 404 U.S. 307 (1971)).  The Information was filed in state court on February 19, 2004, and Mr. Brushwood was arrested on the same day.  *See* Original Record, Vol. I at pp. 1-4, 11.

*Jackson v. Ray*, 390 F.3d at 1261 (concluding that a delay of 4⅓ years had satisfied both inquiries bearing on the "length of delay").

      B.      <u>The Reasons for the Delay</u>

The Court must also consider the reasons for the delay.  *See supra* p. 22.

The Respondent bears the burden "to provide an inculpable explanation for delays." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 531 (1972)).  When delays are chargeable to the State, the significance varies based on the degree of culpability.  The Tenth Circuit Court of Appeals has explained:

> The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay.  A deliberate attempt to delay a trial in order to secure a strategic advantage will weigh heavily against the government, while valid reasons will justify a delay.  Between these two poles lie many reasons for delays for which the government bears responsibility, even when the government did not intend the delays. Negligence and crowded court dockets, for example, weigh against the government, but less heavily than delays deliberately sought to gain improper advantage.

*United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006) (citations omitted).

Some of the delays do not weigh against either party.  For example, at least two delays were caused by the inability to locate witnesses.[35]  The Supreme Court has held that a missing witness constitutes a valid and justifiable reason for delay.  *See Barker v. Wingo*, 407 U.S. 514, 531 (1972).

---

[35]    *See* Original Record, Vol. I at p. 103 (explaining the need for a continuance because the alleged victim and the witnesses were foreign exchange students and were outside the country); Motion Hearing Transcript at pp. 4-6 (explaining the need for a two-week continuance in part because the alleged victim was still unavailable).

Some responsibility for the delay rests with the State.

For instance, several of the delays had resulted from the State's requests for continuances. *See* Original Record, Vol. I at pp. 69, 119; *id*., Vol. III at p. 457. If the prosecution had sought the continuances to hamper the defense, the factor would have weighed strongly in Mr. Brushwood's favor. *See supra* p. 24 (quoting *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006)). However, the Petitioner has not presented any evidence of such a purpose. *See* Petition, Attachment at ECF pp. 33-37. Consequently, these delays weigh only slightly against the Respondent.[36]

There is one unexplained delay from March 9, 2009, to April 20, 2009.[37] Although the State must explain the delays, the parties are silent on the reason for this continuance. *See supra* note 37. In similar circumstances, the Tenth Circuit Court of Appeals has treated unexplained delays as "negligence on the part of the government." *Jackson v. Ray*, 390 F.3d 1254, 1262 (10th Cir. 2004). Negligence is a "more neutral reason" for delay and is weighted less heavily against the State. *Barker v. Wingo*, 407 U.S. 514, 531 (1972); *see supra* p. 24 (quoting *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006)).

---

[36]     *See United States v. Gomez*, 67 F.3d 1515, 1522 (10th Cir. 1995) (stating that the delays, based on the continuances requested by the prosecutor, had weighed against the government but the weight was "not substantial" because the postponements had not been intended for a tactical advantage).

[37]     The docket reflects that on January 23, 2009, the trial was scheduled for March 9, 2009. *See* Original Record, Vol. III at p. 467. On March 6, 2009, both sides announced they were ready for trial; and on March 11, 2009 — without an explanation — the court rescheduled the trial for April 20, 2009. *See id.*

The State's negligence was also the apparent cause of a two-year delay between Mr. Brushwood's forfeiture of a bond in January 2006 and his arraignment on the bond forfeiture in April 2008.[38]  In argument before the trial court, the State explained:

> [F]rom my past experience, they probably just thought he wasn't in court, we issue a warrant and we wait until he gets picked up, not realizing that he's actually in another county jail and then sent to DOC. . . . .  As far as I know, the state, the DA's office didn't know where he was . . . .

Motion Hearing Transcript at pp. 10-11.

"A defendant has no duty to bring himself to trial; the State has that duty . . . ." *Barker v. Wingo*, 407 U.S. 514, 527 (1972) (footnote omitted).  However, the prosecutor's mistake involved negligence rather than an intent to hamper the defense.  *See supra* p. 26 & note 36.  As a result, the two-year delay does not weigh heavily against the State.[39]

Other delays are attributable to the Petitioner.

---

[38]     The Petitioner obtained a bond on June 10, 2005.  *See* Original Record, Vol. I at pp. 117-18 (notice of a bond filed on June 10, 2005).  Over seven months later, Mr. Brushwood's bondsman filed a notice stating that the Petitioner had been taken into custody at the Kingfisher County Jail.  *See id.*, Vol. I at p. 151.  This notice was apparently overlooked, and an arrest warrant was issued four days later.  *See id.*, Vol. I at p. 152.  Over a year later, Mr. Brushwood filed a *pro se* motion for a speedy trial, and authorities apparently overlooked this motion.  *See id.*, Vol. I at pp. 153-54; *see also id.*, Vol. III at pp. 463-64 (docket sheet reflecting the absence of a response or ruling on Mr. Brushwood's motion for a speedy trial).  The Petitioner was eventually transferred to the Oklahoma Department of Corrections ("DOC") to serve an unrelated sentence, and the State had to obtain a "writ of habeas corpus ad prosequendum" in March 2008.  *See id.*, Vol. I at p. 159.  The arraignment on the bond forfeiture took place the following month.  *See id.*, Vol. I at p. 163.

[39]     *See, e.g.*, *Rayborn v. Scully*, 858 F.2d 84, 87, 91 (2d Cir. 1988) (holding that two years of "clerical mishaps," in which the defendant had been "lost in bureaucratic limbo," involved only "negligence" and weighed relatively lightly against the State).

For example, Mr. Brushwood jointly requested two continuances.  *See* Original Record, Vol. I at p. 40 (granting a joint motion for a continuance), p. 146 (same).  When the Petitioner seeks a continuance, the passage of time cannot be weighed against the State.[40]

The Petitioner was also released and incarcerated elsewhere on an unrelated charge.  *See supra* note 38.  This incident caused Mr. Brushwood to miss a pretrial conference.[41]  And, when he was recommitted, the court had to appoint a new attorney and she needed additional time to prepare.  *See* Original Record, Vol. I at pp. 164, 166.  These delays are attributable to Mr. Brushwood rather than the State.[42]

---

[40]     *See, e.g.*, *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011) (stating that the defendant's joint motion for a continuance supported a finding that he was partially to blame for the trial delay), *cert. denied*, __ U.S. __, 132 S. Ct. 1647 (2012).

[41]     *See* Original Record, Vol. I at p. 152 (indicating the cancellation of a pretrial conference on January 30, 2006, because of the Petitioner's failure to appear), p. 163 (rescheduling of the pretrial conference for April 16, 2008, following the petitioner's arraignment for failure to appear at the January 30, 2006, pretrial conference).

[42]     *See United States v. Ferguson*, 498 F.2d 1001, 1007 (D.C. Cir. 1974) (holding that a defendant's difficulties in securing counsel cannot be weighed against the government in a speedy trial analysis); *see also Cheadle v. Dinwiddie*, 2008 WL 281521, Westlaw op. at 1, 7 (W.D. Okla. Jan. 31, 2008) (unpublished op.) (concluding that the OCCA had acted reasonably when it determined that delays attributable to the need to reappoint counsel had weighed against the petitioner), *certificate of appealability denied*, 278 Fed. Appx. 820 (10th Cir. May 20, 2008) (unpublished op.).

The proceedings were also delayed roughly five months because of a competency examination.[43] Because the record does not disclose who had initiated the examination,[44] the OCCA could reasonably have considered the five-month delay as neutral.

C.     The Petitioner's Assertion of His Right to a Speedy Trial

The third factor is whether the Petitioner had previously asserted a right to a speedy trial. *See supra* p. 22. But this factor is not based solely on the filing of a motion for a speedy trial. Instead, the question is "whether the [Petitioner's] behavior during the course of litigation evinces a desire to go to trial with dispatch." *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006) (citing *Barker v. Wingo*, 407 U.S. 514, 536 (1972)).

Mr. Brushwood objected to continuances and repeatedly complained about the denial of a speedy trial.[45] However, the Petitioner also agreed to continuances. *See supra* p. 27. In these circumstances, the OCCA could have viewed the factor in a variety of ways. For example, the Court could have reasonably considered this factor as either neutral or only slightly supportive of the speedy trial claim.

---

[43]     *See*  Original Record, Vol. I at p. 167 (minute order reflecting the setting of a trial on October 20, 2008); *id.*, Vol. II at pp. 241-42 (order authorizing a competency evaluation on October 14, 2008), p. 244 (order to resume proceedings following a competency evaluation and to set the trial on March 9, 2009).

[44]     The prosecutor stated that defense counsel had filed a motion to declare Mr. Brushwood incompetent. Motion Hearing Transcript at p. 11. But the actual motion does not appear in the habeas record.

[45]     *See* Original Record, Vol. I at pp. 69, 113, 153-54; *id.*, Vol. II at pp. 349-50; *id.*, Vol. III at p. 457; Motion Hearing Transcript at pp. 6-15.

D.      Prejudicial Effect of the Delay

The fourth factor entails an examination of potential prejudice to Mr. Brushwood because of the delay.  *See supra* p. 22.  On this element, the Petitioner bears the burden.[46]

In deciding whether Mr. Brushwood has shown prejudice, the Court should consider the interests that the right to a speedy trial was designed to protect:

- prevention of oppressive pretrial incarceration,

- minimization of anxiety and concern, and

- prevention of a hindrance to the defense.

*See Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004).

The Petitioner alleges that:

- he had spent time "sitting in jail waiting on the State to obtain its [missing] witnesses, . . . [which it] never did" and

- had he been tried "any time before 2004 and April 2007," the State could not have introduced propensity witnesses because Okla. Stat. tit. 12 § 2413 had not yet come into existence.

Petition, Attachment at ECF pp. 38-39.

The OCCA reasonably found a lack of prejudice.  *See supra* p. 22.

Mr. Brushwood complains in part that he had to wait in jail while the prosecution tried in vain to locate its witnesses.  Petition, Attachment at ECF p. 40.  This complaint can be

---

[46]     *See United States v. Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010) ("'The individual claiming the Sixth Amendment [speedy trial] violation has the burden of showing prejudice.'" (citation omitted)); *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004) ("The burden of showing all types of prejudice lies with the individual claiming the [speedy trial] violation . . . ." (citation omitted)).

liberally read as an insinuation of prejudice from his pretrial incarceration.  But even with this reading of the petition, Mr. Brushwood's pretrial detention would not vitiate the reasonableness of the OCCA's determination.

Mr. Brushwood remained in pretrial detention from February 19, 2004, to June 10, 2005.[47]  After release on June 10, 2005, however, Mr. Brushwood was arrested and sentenced on unrelated charges.[48]  This period of confinement is immaterial on the issue of prejudice,[49] and the 16-month period of pretrial detention on the present charges would not have compelled the OCCA to find prejudice.[50]

Mr. Brushwood also argues that with the delay, the State was able to strengthen its case through the enactment of legislation that allowed introduction of propensity evidence.

---

[47]    *See* Original Record, Vol. I at pp. 11-12 (warrant & arraignment minute reflecting denial of bond), p. 18 (temporary commitment order reflecting an inability to satisfy the bond of $50,000), pp. 116-22 (minute sheet and order reflecting reduction of the bond to $10,000.00 and an appearance bond for this amount on June 10, 2005).

[48]    Mr. Brushwood was arrested on unrelated charges and incarcerated in the Kingfisher County Jail on January 25, 2006.  Original Record, Vol. I at pp. 151-52; *see supra* note 38.  He was convicted on July 18, 2007, and sentenced to prison for five years.  Amended State Court Record, Attachment (June 20, 2012).

[49]    *See United States v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007) (concluding that pretrial incarceration had not caused any prejudice because even if the defendant had been released, he would have remained in state custody on other charges); *United States v. Walker*, 92 F.3d 714, 719 (8th Cir. 1996) (holding that the period of incarceration on state charges did not constitute prejudicial delay in a federal prosecution).

[50]    *See United States v. Munoz-Amado*, 182 F.3d 57, 63 (1st Cir. 1999) ("the nineteen months of pretrial incarceration in this case, by itself, is insufficient to establish a constitutional level of prejudice" (citation omitted)); *see also Barker v. Wingo*, 407 U.S. 514, 534 (1972) (concluding that the "prejudice was minimal" even though the defendant had spent ten months in pretrial detention).

*See supra* pp. 4-5, 31-32.  But the prejudice factor focuses on the defense rather than the prosecutor.[51]

Based on these considerations, the OCCA could reasonably conclude that the delay would not have entailed prejudice to Mr. Brushwood.

E.      Balancing of the Factors

The speedy trial claim is supported by the length of the pretrial period, some of the reasons for the delay, and the insistence on a speedy trial.  *See supra* pp. 23-26, 28.  But other factors favor the Respondent, such as some of the reasons for the delay, the Petitioner's contributions to the delays, and the lack of prejudice.  *See supra* pp. 26-27, 29-31.  With the factors pointing in opposite directions, the OCCA could reasonably reject the claim involving denial of a speedy trial.

RECOMMENDED RULING

The Court should deny the petition for habeas relief.

NOTICE OF THE RIGHT TO OBJECT

The Petitioner can object to this report and recommendation.  To do so, Mr. Brushwood must file an objection with the Clerk of this Court by August 30, 2012.  *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C.A. § 636(b)(1) (2011 supp.).  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[51]      *See United States v. Larson*, 627 F.3d 1198, 1209 (10th Cir. 2010) ("That the government may have strengthened its case during the delay does not implicate this interest." (citation omitted)).

## STATUS OF THE REFERRAL

The referral is discharged.

Entered this 13th day of August, 2012.

Robert E. Bacharach
United States Magistrate Judge